<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

MIGUEL ORTIZ,                          :
                                       :    Civil Action No. 06-4730 (PGS)
                  Plaintiff,           :
                                       :
            v.                         :    **OPINION**
                                       :
MR. HAYMAN, et al.,                    :
                                       :
                  Defendants.          :

**APPEARANCES:**

Plaintiff <u>pro</u> <u>se</u>
Miguel Ortiz
Mid State Correctional Facility
P.O. Box 866
Range Road
Wrightstown, NJ 08562

**SHERIDAN,** District Judge

        Plaintiff Miguel Ortiz, a prisoner confined at Mid State

Correctional Facility in Wrightstown, New Jersey, seeks to bring

this action <u>in</u> <u>forma</u> <u>pauperis</u> pursuant to 42 U.S.C. § 1983,

alleging violations of his constitutional rights.[1]

---

        [1] This Court previously administratively terminated this
matter based upon Plaintiff's failure to submit copies of his
institutional account statements as required by 28 U.S.C.
§ 1915(a)(2).  Based upon Plaintiff's submission of a complete
application, with account statements, and the absence of three
qualifying dismissals within 28 U.S.C. §1915(g), this Court will
grant Plaintiff's application to proceed <u>in</u> <u>forma</u> <u>pauperis</u>
pursuant to 28 U.S.C. § 1915(a) and order the Clerk of the Court
to re-open this matter and to file the Complaint.

At this time, the Court must review the Complaint to determine whether it should be dismissed as frivolous or malicious, for failure to state a claim upon which relief may be granted, or because it seeks monetary relief from a defendant who is immune from such relief.

I. <u>BACKGROUND</u>

The following factual allegations are taken from Plaintiff's Complaint and are accepted as true for purposes of this review.

Plaintiff contends that he was beaten, while handcuffed, by defendants B. McGill, Marlon Curtis, Nathaniel Bush,[2] C. Eatman, and T. Gordon. Plaintiff alleges that Defendant Tom Whitley witnessed the assault but failed to intervene. Plaintiff alleges that this incident was videotaped, but that no videotape was ever produced. Following this incident, Plaintiff alleges that he was placed in lock-up, and denied proper medical care, where he remained for 96 days.

Plaintiff contends that defendant H. Ervin falsely charged Plaintiff with assault to cover up for the beating by correctional officers. Plaintiff contends that defendants Tom Whitley and Nurse Dotson provided false testimony during the subsequent disciplinary hearing, to cover up for the beating by correctional officers. Plaintiff contends that the defendant

---

[2] Plaintiff contends that Defendant Nathaniel Bush's participation in the beating was "an act of retaliation."

2

hearing officers S. Maniscalco and Ms. Nolley convicted Plaintiff of a weapons charge without evidence in support of the charge.

Plaintiff contends that Defendant Administrator Lydell Sherrer allowed Plaintiff to remain in lockup for 11 days without a hearing. He contends that he did not receive adequate medical treatment while in lockup.

Plaintiff contends that the Superior Court of New Jersey, Appellate Division, remanded the matter back to the Department of Corrections and ordered the DOC "to either produce the evidence or state why it was not produced, and if not to reverse and exonerate the plaintiff which was done by hearing officer Makareski on August 10th, 2006."[3]

Plaintiff contends that Defendants Administrator Lydell Sherrer and Peter Hilburn returned Plaintiff to the general population at Northern State Prison knowing that Plaintiff's "life would be at risk" because of his problems with the officers who had assaulted him.

Plaintiff also contends that he was subsequently transferred to Bayside State Prison. He contends that Defendant

---

[3] This Court takes judicial notice of the opinion of the Appellate Division reported at Ortiz v. Department of Corrections, 2006 WL 1765430 (N.J. Super. 2006). The Appellate Division affirmed the finding of guilt of the disciplinary infraction, which was not contested by Plaintiff on appeal, but vacated the sanctions and remanded, on state law grounds, for further proceedings on the question whether the delay in the hearing was justified, and for an appropriate modification of the sanctions if no exceptional circumstances justified the delay.

Administrator Lydell Sherrer and Defendant Peter Hilburn transferred him with knowledge that he should not be transferred there because he would be retaliated against "due to a problem in 1999-2000." He also alleges that, following the transfer, defendant Bayside Administrator Thomas Sullivan and other officers not named as defendants did retaliate against him.

This Court construes the Complaint as asserting the following claims: (1) use of excessive force in violation of the Eighth Amendment, (2) violations of Plaintiff's right to due process by the filing of false charges, delay in the hearing, and by the provision of false testimony, (3) violations of the Eighth Amendment duty to protect Plaintiff, (4) violation of the Eighth Amendment right to adequate medical care, and (5) retaliation. Plaintiff seeks injunctive relief and damages.

## II.  STANDARDS FOR A SUA SPONTE DISMISSAL

This Court must dismiss, at the earliest practicable time, certain in forma pauperis and prisoner actions that are frivolous, malicious, fail to state a claim, or seek monetary relief from a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2) (in forma pauperis actions); 28 U.S.C. § 1915A (actions in which prisoner seeks redress from a governmental defendant); 42 U.S.C. § 1997e (prisoner actions brought with respect to prison conditions).

4

In determining the sufficiency of a <u>pro</u> <u>se</u> complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. <u>Haines v. Kerner</u>, 404 U.S. 519, 520-21 (1972); <u>United States v. Day</u>, 969 F.2d 39, 42 (3d Cir. 1992). The Court must "accept as true all of the allegations in the complaint and all reasonable inferences that can be drawn therefrom, and view them in the light most favorable to the plaintiff." <u>Morse v. Lower Merion School Dist.</u>, 132 F.3d 902, 906 (3d Cir. 1997). The Court need not, however, credit a <u>pro</u> <u>se</u> plaintiff's "bald assertions" or "legal conclusions." <u>Id.</u>

A complaint is frivolous if it "lacks an arguable basis either in law or in fact." <u>Neitzke v. Williams</u>, 490 U.S. 319, 325 (1989) (interpreting the predecessor of § 1915(e)(2), the former § 1915(d)). The standard for evaluating whether a complaint is "frivolous" is an objective one. <u>Deutsch v. United States</u>, 67 F.3d 1080, 1086-87 (3d Cir. 1995).

A <u>pro</u> <u>se</u> complaint may be dismissed for failure to state a claim only if it appears "'beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.'" <u>Haines</u>, 404 U.S. at 521 (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 45-46 (1957)); <u>Milhouse v. Carlson</u>, 652 F.2d 371, 373 (3d Cir. 1981). Where a complaint can be remedied by an amendment, a district court may not dismiss the complaint with prejudice, but must permit the amendment. <u>Denton v. Hernandez</u>,

5

504 U.S. 25, 34 (1992); <u>Grayson v. Mayview State Hospital</u>, 293
F.3d 103, 108 (3d Cir. 2002) (dismissal pursuant to 28 U.S.C.
§ 1915(e)(2)); <u>Shane v. Fauver</u>, 213 F.3d 113, 116-17 (3d Cir.
2000) (dismissal pursuant to 42 U.S.C. § 1997e(c)(1)); <u>Urrutia v.
Harrisburg County Police Dept.</u>, 91 F.3d 451, 453 (3d Cir. 1996).

### III.   <u>SECTION 1983 ACTIONS</u>

A plaintiff may have a cause of action under 42 U.S.C.
§ 1983 for certain violations of his constitutional rights.
Section 1983 provides in relevant part:

> Every person who, under color of any statute,
> ordinance, regulation, custom, or usage, of any State
> or Territory ... subjects, or causes to be subjected,
> any citizen of the United States or other person within
> the jurisdiction thereof to the deprivation of any
> rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party
> injured in an action at law, suit in equity, or other
> proper proceeding for redress ... .

Thus, to state a claim for relief under § 1983, a plaintiff must
allege, first, the violation of a right secured by the
Constitution or laws of the United States and, second, that the
alleged deprivation was committed or caused by a person acting
under color of state law. <u>West v. Atkins</u>, 487 U.S. 42, 48
(1988); <u>Piecknick v. Pennsylvania</u>, 36 F.3d 1250, 1255-56 (3d Cir.
1994).

Local government units and supervisors are not liable under
§ 1983 solely on a theory of <u>respondeat</u> <u>superior</u>. <u>See</u> <u>City of
Oklahoma City v. Tuttle</u>, 471 U.S. 808, 824 n.8 (1985); <u>Monell v.

New York City Department of Social Services, 436 U.S. 658, 690-91, 694 (1978) (municipal liability attaches only "when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury" complained of); Natale v. Camden County Correctional Facility, 318 F.3d 575, 583-84 (3d Cir. 2003). "A defendant in a civil rights action must have personal involvement in the alleged wrongs, liability cannot be predicated solely on the operation of respondeat superior. Personal involvement can be shown through allegations of personal direction or of actual knowledge and acquiescence." Rode v. Dellarciprete, 845 F.2d 1195, 1207 (3d Cir. 1988) (citations omitted). Accord Robinson v. City of Pittsburgh, 120 F.3d 1286, 1293-96 (3d Cir. 1997); Baker v. Monroe Twp., 50 F.3d 1186, 1190-91 (3d Cir. 1995).[4]

Finally, a § 1983 action brought against a person in his or her official capacity "generally represent[s] only another way of pleading an action against an entity of which an officer is an agent." Monell, 436 U.S. at 690 n.55. "[I]n an official-capacity action, ... a governmental entity is liable under § 1983 only when the entity itself is a 'moving force' behind the

---

[4] As the claims against Defendant Commissioner Mr. Hayman and the due process claims against Defendant Lydell Sherrer appear to be based solely upon a theory of respondeat superior, those claims will be dismissed without prejudice.

deprivation; thus, in an official capacity suit the entity's 'policy or custom' must have played a part in the violation of federal law." <u>Kentucky v. Graham</u>, 473 U.S. 159, 166 (1985) (internal quotation marks and citations omitted).

IV.  <u>ANALYSIS</u>

A.  <u>Eighth Amendment Excessive Force Claim</u>

The Eighth Amendment to the U.S. Constitution, applicable to the states through the Fourteenth Amendment, prohibits punishments that are "cruel and unusual."  An Eighth Amendment claim includes both an objective component, whether the deprivation of a basic human need is sufficiently serious, and a subjective component, whether the officials acted with a sufficiently culpable state of mind.  <u>Wilson v. Seiter</u>, 501 U.S. 294, 298 (1991).  The objective component is contextual and responsive to "'contemporary standards of decency.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 8 (1992).  The subjective component follows from the principle that "'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment.'"  <u>See</u> <u>Farmer v. Brennan</u>, 511 U.S. 825, 834 (1994) (quoting <u>Wilson</u>, 501 U.S. at 297 (internal quotation marks, emphasis, and citations omitted)); <u>Rhodes v. Chapman</u>, 452 U.S. 337, 345 (1981).  What is necessary to establish an unnecessary and wanton infliction of pain varies also according to the nature of the alleged constitutional violation.  <u>Hudson v. McMillian</u>, 503 U.S. at 5.

Where the claim is one of excessive use of force, the core inquiry as to the subjective component is that set out in <u>Whitley v. Albers</u>, 475 U.S. 312, 320-21 (1986)(citation omitted): "'whether force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm.'"  <u>Quoted in</u> <u>Hudson</u>, 503 U.S. at 6. "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated."  <u>Id.</u> at 9.  In such cases, a prisoner may prevail on an Eighth Amendment claim even in the absence of a serious injury, the objective component, so long as there is some pain or injury and something more than <u>de minimis</u> force is used.  <u>Id.</u> at 9-10 (finding that blows which caused bruises, swelling, loosened teeth, and a cracked dental plate were not <u>de minimis</u> for Eighth Amendment purposes).

To determine whether force was used in "good faith" or "maliciously and sadistically," courts have identified several factors, including:

> (1) "the need of the application of force"; (2) "the relationship between the need and the amount of force that was used"; (3) "the extent of injury inflicted"; (4) "the extent of the threat to the safety of staff and inmates, as reasonably perceived by responsible officials on the basis of the facts known to them"; and (5) "any efforts made to temper the severity of a forceful response."

Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000) (quoting
Whitley v. Albers, 475 U.S. at 321).  Thus, not all use of force
is "excessive," the level of a constitutional violation.

In addition, "a corrections officer's failure to intervene
in a beating can be the basis of liability for an Eighth
Amendment violation under § 1983 if the corrections officer had a
reasonable opportunity to intervene and simply refused to do so.
Furthermore, ... a corrections officer can not escape liability
by relying upon his inferior or non-supervisory rank vis-a-vis
the other officers."  Smith v. Mensinger, 293 F.3d 641, 640 (3d
Cir. 2002).

Plaintiff's excessive force claims against defendants B.
McGill, Marlon Curtis, Nathaniel Bush, C. Eatman, T. Gordon, and
Tom Whitley are sufficient to avoid dismissal at this screening
stage of the litigation.

B.    Due Process Claim

A liberty interest protected by the Due Process Clause may
arise from either of two sources:  the Due Process Clause itself
or State law.  See Hewitt v. Helms, 459 U.S. 460, 466 (1983);
Asquith v. Department of Corrections, 186 F.3d 407, 409 (3d Cir.
1999).

With respect to convicted and sentenced prisoners, "[a]s
long as the conditions or degree of confinement to which the
prisoner is subjected is within the sentence imposed upon him and

10

is not otherwise violative of the Constitution, the Due Process
Clause does not in itself subject an inmate's treatment by prison
authorities to judicial oversight." Montanye v. Haymes, 427 U.S.
236, 242 (1976), quoted in Hewitt, 459 U.S. at 468 and Sandin v.
Conner, 515 U.S. 472, 480 (1995). Cf. Washington v. Harper, 494
U.S. 210, 221-22 (1990)(prisoner has liberty interest under the
Due Process Clause in freedom from involuntary administration of
psychotropic drugs); Vitek v. Jones, 445 U.S. 480, 493-94
(1980)(prisoner has liberty interest under the Due Process Clause
in freedom from involuntary transfer to state mental hospital
coupled with mandatory treatment for mental illness, a punishment
carrying "stigmatizing consequences" and "qualitatively
different" from punishment characteristically suffered by one
convicted of a crime).

    "Discipline by prison officials in response to a wide range
of misconduct falls within the expected parameters of the
sentence imposed by a court of law." Sandin, 515 U.S. at 485
(upholding prisoner's sentence of 30 days' disciplinary
segregation following a hearing at which he was not permitted to
produce witnesses). See also Asquith, 186 F.3d at 410-11 (no
liberty interest under the Due Process Clause in remaining in
halfway house).

    States, however, may confer on prisoners liberty interests
that are protected by the Due Process Clause. "But these

11

interests will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin, 515 U.S. at 484 (finding that disciplinary segregation conditions which effectively mirrored those of administrative segregation and protective custody were not "atypical and significant hardships" in which a state conceivably might create liberty interest). See also Asquith, 186 F.3d at 411-12 (return to prison from halfway house did not impose "atypical and significant hardship" on prisoner and, thus, did not deprive him of protected liberty interest). In Griffin v. Vaughn, 112 F.3d 703, 708-09 (3d Cir. 1997), the Court of Appeals for the Third Circuit held that a 15-month confinement in administrative custody did not impose "atypical and significant hardship," even in the face of state regulation requiring release to the general population after 20 days in the absence of a misconduct charge. The Court of Appeals did note, however, that if an inmate is committed to undesirable conditions for an atypical period of time in violation of state law, that is a factor to be considered in determining whether the prisoner has been subjected to "atypical and significant hardship" triggering due process protection. Id.

With respect to the procedural requirements of disciplinary proceedings, "so long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim." Smith v. Mensinger, 293 F.3d 641 (3d Cir. 2002) (citing Freeman v. Rideout, 808 F.2d 949, 952-53 (2d Cir. 1986) (holding that "the mere filing of [a false] charge itself" does not constitute a cognizable claim under § 1983 so long as the inmate "was granted a hearing, and had the opportunity to rebut the unfounded or false charges"), cert. denied, 485 U.S. 982 (1988)). See also Hanrahan v. Lane, 747 F.2d 1137, 1140 (7th Cir. 1984) (finding that so long as prison officials provide a prisoner with the procedural requirements outlined in Wolff v. McDonnell, 418 U.S. 539, 558 (1974), then the prisoner has not suffered a constitutional violation). See also Duncan v. Neas, No. 86-109, 1988 WL 91571, at *1 (D.N.J. Aug. 30, 1988) (determining that "the alleged knowing falsity of the charge [does not state] a claim of deprivation of a constitutionally protected liberty interest ... where procedural due process protections were provided").

In Wolff v. McDonnell, the Supreme Court set forth the requirements of due process in prison disciplinary hearings. An inmate is entitled to (1) written notice of the charges and no less than 24 hours to marshal the facts and prepare a defense for

an appearance at the disciplinary hearing; (2) a written
statement by the fact finder as to the evidence relied on and the
reasons for the disciplinary action; and (3) an opportunity "to
call witnesses and present documentary evidence in his defense
when to do so will not be unduly hazardous to institutional
safety or correctional goals." Wolff, 418 U.S. at 563-71.
However, inmates do not have an absolute federal
constitutionally-protected right to confront and cross-examine
witnesses at their prison disciplinary hearings. Id. at 567-68.
See also Baxter v. Palmigiano, 425 U.S. 308, 321-22 (1976); Young
v. Kann, 926 F.2d 1396, 1404 (3d Cir. 1991); Sanchez v. Roth, 891
F. Supp. 452, 458-59 (N.D.Ill.1995); Harrison v. Pyle, 612 F.
Supp. 850, 854-55 (D. Nev. 1985).

Nor does due process require that a hearing be held in exact
accordance with the time period specified by the applicable New
Jersey statutes. See Burgos v. New Jersey State Parole Board,
2000 WL 33722126, *8 (D.N.J. Aug. 7, 2000) (parole hearings). In
addition, while delay for an extended period of time may violate
a prisoner's due process rights, "procedural errors are generally
cured by holding a new hearing in compliance with due process
requirements." Id. at *8-9. See also Johnson v. Paparozzi, 219
F.Supp.2d 635, 642 (D.N.J. 2002).

Finally, the requirements of due process are met if some
evidence supports the decision by prison disciplinary hearing

officers to issue disciplinary sanctions.  <u>Superintendent, Mass. Corr. Inst. v. Hill</u>, 472 U.S. 445, 455 (1985).

As Plaintiff has not alleged that the false disciplinary charges have affected the duration of his sentence or otherwise caused him any atypical and significant hardship, he has failed to assert that defendants deprived him of a protected liberty interest at all.  <u>See</u> <u>Wilson v. Wellman</u>, 238 F.3d 426, 2000 WL 1829265 (6th Cir. Dec. 6, 2000); <u>Washington v. Madding</u>, 189 F.3d 476, 1999 WL 511125 (9th Cir. July 15, 1999).  Moreover, had the filing of false disciplinary charges somehow implicated a protected liberty interest, Plaintiff also would have to demonstrate "that the procedures afforded him at the disciplinary hearing fell short of the requirements enunciated in <u>Wolff v. McDonnell</u>[, 418 U.S. 539 (1974)]."  <u>Jackson v. Johnson</u>, 15 F.Supp.2d 341, 351 (S.D.N.Y. 1998).  <u>See</u> <u>Sandin</u>, 515 U.S. at 487.  Here, Plaintiff makes no such allegation of defective procedures.  To the contrary, he states that, after appeal, the disciplinary proceeding terminated in his favor, insofar as the sanctions are concerned.[5]  Accordingly, Plaintiff has failed to state a due process claim arising out of the institution of the disciplinary

---

[5] Although Plaintiff contends that some false evidence was presented at his hearing, he does not contend that there was no evidence to support the finding of guilt.  In addition, this Court notes that Plaintiff did not contest the finding of guilt when he appealed to the Appellate Division.

charge and the procedures associated with resolution of that charge.

C.    Eighth Amendment Failure to Protect Claim

Under the Eighth Amendment, prison officials have a duty to provide humane conditions of confinement, including adequate food, clothing, shelter, medical care, and personal safety. Farmer v. Brennan, 511 U.S. 825, 832 (1994); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992). Accordingly, prison officials must take reasonable measures "to protect prisoners from violence at the hands of other prisoners." Farmer, 511 U.S. at 833 (1994) (internal quotations omitted). "Being violently assaulted in prison is simply 'not part of the penalty that criminal offenders pay for their offenses against society.'" Id. at 834 (quoting Rhodes v. Chapman, 452 U.S. 337, 347 (1981)).

To successfully state a claim for violation of the Eighth Amendment, an inmate must satisfy both the objective and subjective components of such a claim. The inmate must allege a deprivation which was "sufficiently serious," and that in their actions or omissions, prison officials exhibited "deliberate indifference" to the inmate's health or safety. See Farmer, 511 U.S. at 834; Wilson v. Seiter, 501 U.S. 294, 305 (1991); Nami v. Fauver, 82 F.3d 63, 67 (3d Cir. 1996).

In the context of a failure-to-protect claim, the inmate must show that he is "incarcerated under conditions posing a

16

substantial risk of harm," Farmer, 511 U.S. at 833, and that prison officials knew of and disregarded the excessive risk to inmate safety, Id. at 837. "A pervasive risk of harm may not ordinarily be shown by pointing to a single incident or isolated incidents, but it may be established by much less than proof of a reign of violence and terror." Riley v. Jeffes, 777 F.2d 143, 147 (3d Cir. 1985). "Whether ... prison official[s] had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, and a fact finder may conclude that ... prison official[s] knew of a substantial risk from the very fact that the risk was obvious." Farmer, 511 U.S. at 842. Deliberate indifference is more than a mere lack of ordinary due care, however; it is a state of mind equivalent to a reckless disregard of a known risk of harm. Farmer, 511 U.S. at 834.

Here, Plaintiff alleges that Defendants Lydell Sherrer and Peter Hilburn failed to protect him by returning him to the general population at Northern State Prison and that Lydell Sherrer failed to protect him by transferring him to Bayside State Prison, where some previous incident created a risk of harm, and that Bayside Administrator failed to protect Plaintiff at Bayside.

Plaintiff's allegations are completely conclusory. Plaintiff does not allege any facts which suggest that defendants

17

were informed of a specific risk of harm to him, <u>Nami</u>, 82 F.3d at 67-68; <u>Young</u>, 960 F.2d at 362, or that "a substantial risk of ... attacks was longstanding, pervasive, well-documented" or otherwise obvious to them.  <u>Farmer</u>, 511 U.S. at 842; <u>accord</u> <u>Hamilton v. Leavy</u>, 117 F.3d 742, 747-48 (3d Cir. 1997); <u>Ingalls</u> <u>v. Florio</u>, 968 F.Supp. 193, 199-200 (D.N.J. 1997).  Plaintiff has failed to state an Eighth Amendment failure-to-protect claim.

D.    <u>Eighth Amendment Medical Care Claim</u>

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  <u>Estelle v. Gamble</u>, 429 U.S. 97, 103-04 (1976).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege: (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  <u>Id.</u> at 106.

To satisfy the first prong of the <u>Estelle</u> inquiry, the inmate must demonstrate that his medical needs are serious. "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  <u>Hudson v. McMillian</u>, 503 U.S. 1, 9 (1992).  Serious medical needs include those that have been diagnosed by a physician as requiring treatment or that are so

18

obvious that a lay person would recognize the necessity for doctor's attention, and those conditions which, if untreated, would result in lifelong handicap or permanent loss.  Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006 (1988).

The second element of the Estelle test requires an inmate to show that prison officials acted with deliberate indifference to his serious medical need.  "Deliberate indifference" is more than mere malpractice or negligence; it is a state of mind equivalent to reckless disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S. 825, 837-38 (1994).  Furthermore, a prisoner's subjective dissatisfaction with his medical care does not in itself indicate deliberate indifference.  Andrews v. Camden County, 95 F.Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir. 1984).  Similarly, "mere disagreements over medical judgment do not state Eighth Amendment claims."  White v. Napoleon, 897 F.2d 103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment ... [which] remains a question of sound professional judgment.  Implicit in this deference to prison medical authorities is the assumption that such informed judgment has, in fact, been made."  Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation

omitted).  Even if a doctor's judgment concerning the proper
course of a prisoner's treatment ultimately is shown to be
mistaken, at most what would be proved is medical malpractice and
not an Eighth Amendment violation.  Estelle, 429 U.S. at 105-06;
White, 897 F.2d at 110.

     "Where prison authorities deny reasonable requests for
medical treatment, however, and such denial exposes the inmate
'to undue suffering or the threat of tangible residual injury,'
deliberate indifference is manifest.  Similarly, where 'knowledge
of the need for medical care [is accompanied by the] ...
intentional refusal to provide that care,' the deliberate
indifference standard has been met.  ...  Finally, deliberate
indifference is demonstrated '[w]hen ... prison authorities
prevent an inmate from receiving recommended treatment for
serious medical needs or deny access to a physician capable of
evaluating the need for such treatment."  Monmouth County Corr.
Inst. Inmates v. Lanzaro, 834 F.2d at 346 (citations omitted).
"Short of absolute denial, 'if necessary medical treatment [i]s
... delayed for non-medical reasons, a case of deliberate
indifference has been made out."  Id. (citations omitted).
"Deliberate indifference is also evident where prison officials
erect arbitrary and burdensome procedures that 'result[] in
interminable delays and outright denials of medical care to
suffering inmates.'"  Id. at 347 (citation omitted).  Compare

Durmer v. O'Carroll, 991 F.2d 64, 69 (3d Cir. 1993) (summary judgment properly granted to prison warden and state commissioner of corrections, the only allegation against whom was that they failed to respond to letters from prisoner complaining of prison doctor's treatment decisions) with Sprull v. Gillis, 372 F.3d 218, 236 (3d Cir. 2004) (a non-physician supervisor may be liable under § 1983 if he knew or had reason to know of inadequate medical care).

Here, Plaintiff has failed to allege a serious medical need. In addition, he has failed to identify any individual who refused him medical care. Plaintiff has failed to state a claim for unconstitutional denial of medical care.

E.    Retaliation Claim

To prevail on a retaliation claim, a plaintiff must demonstrate that (1) he engaged in constitutionally-protected activity; (2) he suffered, at the hands of a state actor, adverse action "sufficient to deter a person of ordinary firmness from exercising his [constitutional] rights;" and (3) the protected activity was a substantial or motivating factor in the state actor's decision to take adverse action. Rauser v. Horn, 2001 WL 185120 (3d Cir. 2001) (quoting Allah, 229 F.3d at 225). See also Anderson v. Davila, 125 F.3d 148, 160 (3d Cir. 1997) (citing Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle, 429 U.S. 274

21

(1977)); <u>Thaddeus-X v. Blatter</u>, 175 F.3d 378, 386-99 (6th Cir. 1999), <u>cited with approval in</u> <u>Allah</u>, 229 F.3d at 225.

Plaintiff's allegations of retaliation are completely conclusory, failing to identify any protected activity or any particular adverse action.  Plaintiff has failed to state a claim for retaliation.

V.  <u>CONCLUSION</u>

For the reasons set forth above, the Eighth Amendment excessive force claim may proceed as against defendants B. McGill, Marlon Curtis, Nathaniel Bush, C. Eatman, T. Gordon, and Tom Whitley.  All other claims must be dismissed, pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1), for failure to state a claim.  However, because it is conceivable that Plaintiff may be able to supplement his pleading with facts sufficient to

22

overcome the deficiencies identified herein, the Court will grant Plaintiff leave to file an amended complaint.[6]  An appropriate order follows.


S/ *Peter G. Sheridan*
PETER G. SHERIDAN, U.S.D.J.


Dated: January 30, 2006

---

[6] Plaintiff should note that when an amended complaint is filed, the original complaint no longer performs any function in the case and "cannot be utilized to cure defects in the amended [complaint], unless the relevant portion is specifically incorporated in the new [complaint]."  6 Wright, Miller & Kane, Federal Practice and Procedure § 1476 (2d ed. 1990) (footnotes omitted).  An amended complaint may adopt some or all of the allegations in the original complaint, but the identification of the particular allegations to be adopted must be clear and explicit.  Id.  To avoid confusion, the safer course is to file an amended complaint that is complete in itself.  Id.