IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

MIGUEL ORTIZ,

        Plaintiff,

v.

GEORGE HAYMAN, et al.
        Defendants.

CIVIL ACTION NO.
06-4730 (PGS-ES)

Sheridan, U.S.D.J.

# OPINION

## I.

This matter comes before the Court upon motion by Defendants for Summary Judgment pursuant to Fed.R.Civ.P. 56 because Miguel Ortiz ("Ortiz" or "Plaintiff") failed to exhaust administrative remedies. Plaintiff brought this suit under *42 U.S.C. § 1983* alleging violation of his constitutional rights by use of excessive force during his imprisonment at Northern State Prison ("NSP") in Newark, New Jersey.

Ortiz initially filed this action on October 2, 2006. However, on October 17, 2006, the suit was dismissed without prejudice because Ortiz failed to submit a complete in forma pauperis application as required by 28 U.S.C. § 1915 (a)(1), (2). On January 31, 2007 Ortiz submitted an in forma pauperis, the application was granted and the case was reopened. In March 2008, Plaintiff retained counsel.

## II.

## STATEMENT OF FACTS

Plaintiff was a New Jersey State inmate. On May 22, 2005, Plaintiff, while housed at NSP, was in line waiting for medication. After he received his medication, Correction Officers noticed Plaintiff had an envelope stuffed inside his waistband. Correction Officers inspected the envelope and found an eight inch long sharpened metal knife or shank. The envelope also contained instructions describing how to hide the weapon in an inmate's mattress. Plaintiff told the investigating staff that he had seen another inmate drop the envelope while he was waiting in line, that he had planned to return the envelope to the other inmate, and that he was unaware of

the envelope's contents (Defs.' Ex. B. at 2-3).

After the envelope and the sharpened metal were confiscated, Plaintiff was placed in pre-hearing detention on that same day (Administrative Custody Segregation Unit) (Pl.'s Aff. ¶ 2). Plaintiff requested a hearing to contest the charge after a prison hearing officer found him guilty of violating disciplinary charge .202[1] (Defs.' Ex. B at 2-3). The record does not indicate when Plaintiff requested the hearing to contest his charge.

Plaintiff names as Defendants Corrections Officer Lieutenant Whitley, and Senior Corrections Officers McGill, Curtis, Bush, Cleveland, Eatman and Gordon. Plaintiff alleges that Whitley witnessed the assault on him while on duty but did nothing to prevent it. Additionally, Plaintiff claims Whitley lied about the event to protect the other officers involved in the assault. Although Plaintiff claims Whitley witnessed the assault, he also "suspects" that Whitley was not present during the incident (Compl. at 4). As to defendants McGill, Bush, and Eatman, Plaintiff claims they were the officers who assaulted him while he was handcuffed. Plaintiff asserts that Bush's assault on him was an "act of retaliation" but there is no mention as to what initiated the retaliation (Compl. at 4-5). However, with Defendants Gordon and Curtis the Plaintiff only alleges that they assaulted him but does not indicate if the assault was done while he was handcuffed (Compl. at 5.).

Following the attack Plaintiff complained of bodily pains resulting from the attack (Pl.'s Aff.¶ 3). The medical records show that the Plaintiff complained of generalized pain. However, there were no bruises or injury and the skin was intact. The nurse ordered pain medication for Plaintiff (Pl.'s Ex. A. at 16).

On May 23, 2005, Plaintiff alleges that he filled out and submitted an Inmate Remedy

---

[1] This charge is not explained or defined in the records.

Form ("IRF") complaining to NSP administrators that he had been assaulted while in pre-hearing detention (Pl.'s Mem. Opp'n Summ. J. 5; Pl.'s Aff. ¶ 4). Plaintiff claims that he gave the IRF to a Corrections Officer (the officer is not identified) to be placed in the daily mail because detainees are not allowed to place their own mail in a mailbox and there is no secured box for IRFs. Therefore, inmates must give all mail, unsealed to Corrections Officers. An inmate who submits an IRF is not informed if it has been received until the complaint is answered (Pl.'s Aff. ¶ 11). NSP's grievance procedure states that "any complaints involving staff members should be written on an "I.R.F" and forwarded to the office of the Administrator. Upon receipt of the complaint, it will be reviewed and forwarded to the appropriate department head for investigation. The results of the investigation will be viewed and a response will be sent" (Def.'s Ex. C at 4). However, in the event a response is not sent within thirty days the inmate "may submit an Administrative Remedy Form" (Id.)[2].

Although Plaintiff alleges he filed an IRF on May 23, 2005 there is no evidence of such an IRF in the record. Defendants maintain that Plaintiff did not file an IRF on May 23, 2005 because there is no record of that IRF. According to James Dutch ("Dutch"), a New Jersey Department of Corrections ("NJDOC") employee who maintains the records concerning remedy forms, there is no record of a remedy form filed by Mr. Ortiz concerning his alleged assault complaint against officers dated May 23, 2005 (Dutch Aff.¶ 7).

On May 29, 2005, while in pre-hearing detention, Plaintiff was given the opportunity to use the phone. Plaintiff called the Legislative Corrections Ombudsman and complained of the alleged May 22nd assault. According to Plaintiff, the representative advised him to wait for a

---

[2] It is unclear whether the Administrative Remedy Form is different from an Inmate Request Form or if both are the same.

response to his IRF. No follow up information was given about Plaintiff's complaint (Pl.'s Aff. ¶ 5).

Plaintiff was held in pre-hearing detention for 11 days before given a hearing (Defs.' Ex. B at 2-3). On June 2, 2005, Plaintiff was disciplined and received punishment of ten days of detention, a ten-day loss of recreation privileges, 185 days of administrative segregation, and a 185 day loss of commutation time (Defs.' Ex. B at 2-3)[3].

## III.

Summary judgment is appropriate under Fed. R. Civ. P. 56(c) when the moving party demonstrates that there is no genuine issue of material fact and the evidence establishes the moving party's entitlement to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). A factual dispute is genuine if a reasonable jury could return a verdict for the non-movant, and it is material if, under the substantive law, it would affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (*quoting Anderson*, 477 U.S. at 255).

Once the moving party has satisfied its initial burden, the party opposing the motion must

---

[3] On June 6, 2006 Plaintiff submitted an appeal for this decision in *Ortiz v. Department of Corrections*, 2006 WL 1765430 (N.J. Supper. Ct. 2006). The Appellate Division affirmed the finding of guilt of the disciplinary charge but vacated the sanctions and remanded, on state law grounds, for further proceedings on the question of whether the delay in the hearing was justified, and for an appropriate modification of the sanctions if no exceptional circumstances justified the delay.

establish that a genuine issue as to a material fact exists. *Jersey Cent. Power & Light Co. v. Lacey Twp.*, 772 F.2d 1103, 1109 (3d Cir. 1985). The party opposing the motion for summary judgment cannot rest on mere allegations and instead must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; *Siegel Transfer, Inc. v. Carrier Express, Inc.*, 54 F.3d 1125, 1130-31 (3d Cir. 1995). "[U]nsupported allegations . . . and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also* Fed. R. Civ. P. 56(e) (requiring nonmoving party to "set forth specific facts showing that there is a genuine issue for trial"). Moreover, only disputes over facts that might affect the outcome of the lawsuit under governing law will preclude the entry of summary judgement. *Anderson*, 477 U.S. at 247-48.

### IV.

The Prison Litigation Reform Act of 1995 ("PLRA") requires a prisoner to exhaust any available administrative remedies before challenging prison conditions in federal court. *42 U.S.C. § 1997E(a)* (1980). Exhaustion requirement applies to prisoners who were in custody at the time they filed their original complaint (Defs.' Mem. Supp. Summ. J. 4). Exhaustion is mandatory, even if the available administrative remedy cannot grant the prisoner the desired relief. *Booth v. Churner*, 532 U.S. 731 (2002). The PLRA does not require exhaustion of all remedies. However, it requires exhaustion of those administrative remedies "as are available." *Brown v. Croak*, 312 F.3d 109, 111 (3d Cir. 2002); (citing *Camp v Brennan*, 219 F.3d 279, 281 (3d Cir. 2000). In *Woodford v. Ngo*, 548 U.S. 81, 17 (2006), the court held that the administrative law requires "proper exhaustion of all administrative remedies, which means using all steps that the agency holds out, and doing so properly." *Id.* at 18. Therefore, if the party does not pursue all

available means of administrative review, the person will never be able to bring a suit in federal court. *Id.* The availability of remedies to a prisoner is a question of law. *Brown*, 312 F.3d at 113. (citing *Ray v. Kertes*, 285 F.3d 287, 291 (3rd Cir. 2002). Availability means "capable of use; at hand". *Brown* at 113. Available is also defined as "suitable; useable; accessible; obtainable; having sufficient force or efficacy; effectual; valid; present or ready for immediate use." *Id.* Therefore, in order for a remedy to be considered "available" the prisoner must not only know about it, he must also be able to use and access it. Thus, in *Ruggiero v. County of Orange*, 467 F.3d 170, 171 (2d Cir. 2006), the court held that "failure to exhaust administrative remedies would not be justified absent a showing that the detainee was unaware of the administrative grievance procedures contained in the handbook or that he did not understand those procedures."

Although the exhaustion requirement does not have a futility exception, some courts have held that exhaustion can be excused if the defendants' actions estop them from presenting failure to exhaust as a defense, or they make grievance procedures "de facto unavailable by their actions." *Ruggiero* 467 F.3d at 178. (citing *Ziemba v. Wezner*, 366 F.3d 161, 163 (2d Cir. 2004)). Therefore, the *Ruggiero* court recognized that if a "defendant's own actions prevent a prisoner from pursuing administrative procedures, the prisoner's failure to avail himself of those remedies cannot bar his access to the courts." *Id.* Other courts have also held that prisoner's officials' failure to respond to a prisoner's claim can render administrative remedies unavailable. *Brengettcy v. Horton*, 423 F.3d 674, 682 (7th Cir. 2005). In this case, Plaintiff alleges Defendants' agent, a Corrections Officer, failed to deliver the IRF as he requested. Hence, Defendants' actions prevented Plaintiff from perfecting his claims.

There is no doubt Plaintiff knows how to access the administrative grievance system because Plaintiff filed has about thirty such IRFs. Plaintiff claims that on May 23, 2005, he filed

an IRF and gave it to a Corrections Officer[4] to be placed in the daily mail. Plaintiff could not place the IRF in the daily mail himself because detainees are not allowed to place their own mail in a mailbox and there is no secured box for IRFs. Plaintiff, thus, argues that he should not be punished if Defendants did not receive the IRF. Specifically, Plaintiff contends that if Defendants did not receive it is because of NSP's failure as a prison and not his doing. Although Defendants do not acknowledge receiving the May 23, 2005 IRF they have submitted the affidavit of Paul Marks, a Corrections Captain, to show that there were other means by which Ortiz could have submitted his IRF. *See Marks Aff.* ¶¶ 3-5. However, there is nothing else in the record to suggest Ortiz knew about these other means.

In a nutshell, while Plaintiff maintains he filed an IRF on May 23, 2005, Defendants argue that Plaintiff did not file an IRF on that date. In response to the Court's request that Defendants produce Plaintiff's May 23rd IRF, Defendants submitted an affidavit by Dutch to refute Plaintiff's claim that he submitted an IRF on May 23rd. According to Dutch, whose responsibilities include "maintaining records of remedy forms filed by inmates throughout the NJDOC," a search of the records did not reveal an Administrative Remedy Form[5] filed by Plaintiff on May 23rd "concerning an alleged assault." *See* Dutch Aff. ¶¶ 2-7. Additionally, Dutch states that there are no records concerning an alleged assault between the dates of May 22, 2005 and October 2, 2006 filed by Plaintiff. Here, there is a dispute of fact as whether Plaintiff actually filed an IRF on May 23, 2005 making summary judgment at this juncture inappropriate. The State may renew its motion when discovery is complete.

---

[4] Plaintiff does not name or specify which Corrections Officer he gave the May 23rd IRF to.

[5] Not clear if the Administrative Remedy form is the same as the Inmate Request Form which Plaintiff was supposed to file while at NSP